V I R G I N I A: IN THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY

CRAIG R. WASHINGTON,                )
                                    )
and                                 )
                                    )
APRIL WASHINGTON,                   )
        Plaintiffs,                 )
                                    )
v.                                  )    Case No.: CL10-1473
                                    )
CITIMORTGAGE, INC.,                 )
1000 Technology Dr., MS 140         )
O'Fallon, Missouri 63304            )
                                    )
Serve: CT CORPORATION SYSTEM,       )
       Registered Agent,            )
       4701 Cox Rd., Ste. 301       )
       Glen Allen, Virginia 23060   )
       (Henrico County)             )
                                    )
and                                 )
                                    )
EQUITY TRUSTEES, L.L.C.,            )
2020 N. 14th St., Ste. 750          )
Arlington, Virginia 22201           )
                                    )
Serve: JAMES M. TOWARNICKY,         )
       Registered Agent,            )
       3977 Chain Bridge Rd., Ste. 1 )
       Fairfax, Virginia 22030      )
       (City of Fairfax)            )
                                    )
and                                 )
                                    )
MANSOUR MORIDZADEH,                 )
1113 Great Oaks Lane                )
Fredericksburg, Virginia 22401      )
                                    )
        Defendants.                 )

COPY

**COMPLAINT**

EXHIBIT

B

## JURISDICTION AND VENUE

1.    This is a civil action brought, among other things, seeking to set aside a foreclosure sale, and render said sale null and void. And for declaratory and equitable relief, pursuant to section 8.01-184 *et seq.* of the Code of Virginia, 1950, as amended, for a determination of rights of the parties and to quiet title to certain land (hereinafter referred to as the "subject property" or "Plaintiffs' residence") as granted in the parties' deed instruments, chains of title or otherwise provided by law.

2.    This action is brought by Plaintiffs, Craig R. Washington and April Washington, husband and wife, (variously: "Mr. or Mrs. Washington," "the Washingtons," and "Plaintiffs") against Defendants: Citimortgage, Inc. (hereinafter "Defendant Citimortgage"); Equity Trustees, L.L.C. (hereinafter "Defendant Equity"); and Mansour Moridzadeh (hereinafter "Defendant Moridzadeh"), jointly and severally.

3.    Plaintiffs are, and at all times material to this action have been, residents and citizens of the Commonwealth of Virginia.

4.    Defendant Citimortgage is a foreign corporation registered under the laws of the State of New York. Defendant Citimortgage conducts and transacts business in the Commonwealth of Virginia; and has transacted such business at all times material to this action.

5.    Upon information and belief, Defendant Citimortgage also conducts and transacts business under the name of Citifinancial Mortgage Company, Inc.

6.    Defendant Equity is, and at all times material to this action has been, a limited liability company organized and existing under the laws of the Commonwealth

of Virginia, having its principal place of business at 2020 N. 14th Street, Suite 750, Arlington, Virginia 22201.

7.     Upon information and belief, Defendant Moridzadeh is, and at all times material to this action has been, a resident or citizen of the Commonwealth of Virginia.

8.     This Court has jurisdiction over the claims in this action arising under the laws of the Commonwealth of Virginia and the United States of America.

9.     The basis of this case arises out of a dispute between the parties concerning the Deed of Trusts and Note relating to the Plaintiffs' residence (the "subject property") located at 5807 Danielle Drive, Fredericksburg, County of Spotsylvania, Commonwealth of Virginia.

10.    Defendants are residents, for jurisdictional purposes, of Virginia.

## FACTUAL BACKGROUND

11.    The allegations of each of the foregoing paragraphs are incorporated herein as if realleged.

12.    Plaintiffs are the owners of a certain tract or parcel of land, the "subject property," in the Chancellor District, Spotsylvania County, Virginia, being the tract or parcel conveyed to the Plaintiffs, Craig R. Washington and April Washington, husband and wife, as tenants by the entirety with the right of survivorship as at common law, by Deed from Richard H. Mozeleski, dated March 7, 2000, and recorded March 14, 2000, in the Clerk's Office of the Spotsylvania County Circuit Court, Virginia, in Deed Book 1792, Page 760 ("Plaintiffs' Deed"); and more particularly described as:

Washington-Citimortgage Complaint                                    Page 3 of 38

Lot 4, Sheraton Oaks, per plat in Plat File 2 at page 85, revised in Plat File 2 at page 193, and by Plat of Vacation and Replat of Sheraton Oaks as recorded in Plat File 2 at pages 667 and 668, and corrected in Plat File 3 at page 33, in the aforesaid County Land Records.

Being the same property conveyed unto Richard H. Mozeleski by Deed dated February 9, 1999 and recorded in Deed Book 1665 at page 541, in the aforesaid Clerk's Office.

Property Address: 5807 Danielle Drive, Fredericksburg, VA 22407
Parcel 23N-1-4.

A true and accurate copy of the Plaintiffs' Deed is attached and incorporated as Exhibit "A."

13.     On or about December 13, 2002, Plaintiffs executed a Deed of Trust ("DOT") with Key Bank USA, National Association ("Key Bank") as the Lender and beneficiary, and Samuel I. White, P.C. ("Samuel White") as the Trustee. The DOT secured to Key Bank a security interest in the Plaintiffs' residence. A true and accurate copy of the Plaintiffs' Deed of Trust (hereinafter "Key Bank DOT") is attached and incorporated as Exhibit "B."

14.     Upon information and belief, and per the Key Bank DOT, on or about December 13, 2002, the Plaintiffs also executed a Promissory Note in favor of Key Bank in the amount of One hundred thirty thousand dollars ($130,000.00) (hereinafter "Key Bank Note").

15.     The Key Bank DOT, dated December 13, 2002, was recorded on December 20, 2002 in the Clerk's Office of the Spotsylvania County Circuit Court, Virginia, as Instrument No. LR200200039022; however, the Key Bank Note was not recorded.

16.     On or about June 20, 2005, Key Bank executed a Notice of Assignment ("Key Bank NOA"), assigning its interest in the Plaintiffs' residence under the Key Bank DOT, along with the Key Bank Note, to Citifinancial Mortgage Company, Inc.  A true and accurate copy of the Key Bank NOA is attached and incorporated as Exhibit "C."

17.     Upon information and belief, Defendant Citimortgage is the entity named or described as Citifinancial Mortgage Company, Inc. in the Key Bank NOA.

18.     The Key Bank NOA, dated June 20, 2005, was recorded on June 28, 2005 in the Clerk's Office of the Spotsylvania County Circuit Court, Virginia, as Instrument No. LR200500025296; however, neither the Key Bank Note nor any subsequent note was recorded.

19.     On or about July 16, 2010, Mrs. Washington spoke by telephone with a Stephen Wood ("Mr. Wood"), then a Josh Tremble ("Mr. Tremble") regarding the status of the Plaintiffs' mortgage loan.

20.     Mr. Wood and Mr. Tremble are employees of the law firm of Bierman, Geesing, Ward & Wood, LLC ("BGWW").  BGWW represented to Plaintiffs that it was the attorneys for Defendant Equity.

21.     For several months prior to speaking with Mr. Tremble, Plaintiffs attempted to get a hardship letter from Defendant Citimortgage to assist with bringing their loan current.

22.     Plaintiffs had informed Defendant Citimortgage that the hardship letter would help them by allowing Mrs. Washington to access her 401K account without

incurring a penalty, additional fees, or interest, but Defendant Citimortgage would not provide one.

23.    On or about July 16, 2010, when Mrs. Washington spoke with Mr. Tremble regarding the status of the Plaintiffs' mortgage loan, Mrs. Washington discussed with Mr. Tremble why they needed the hardship letter from Defendant Citimortgage to assist with bringing their loan current.

24.    Mr. Tremble, on behalf of Defendant Citimortgage and Defendant Equity, agreed to provide the Plaintiffs with a hardship letter and that any pending foreclosure sale would be postponed/stalled so that the Plaintiffs could get the loan from Mrs. Washington's 401K account.

25.    Mr. Tremble, on behalf of Defendant Citimortgage and Defendant Equity, made an agreement with the Plaintiffs that they would be able to repay the past due payments and reinstate the loan to current status.

26.    Additionally, the Plaintiffs informed Mr. Tremble that the hardship letter would be more beneficial and a more convenient way to obtain the funds needed to reinstate the loan; but if it was very urgent for them to pay the past due amount, they were ready, willing, and able to obtain the funds by other means.

27.    Mr. Tremble was fully aware of the Plaintiffs' position/predicament and agreed to provide the hardship letter.

28.    At no time during the conversation with Mr. Tremble, did he inform or warn Mrs. Washington that their residence was still subject to any pending foreclosure sale.

Washington-Citimortgage Complaint                                Page 6 of 38

29.     On or about July 23, 2010, Plaintiffs received the Hardship Letter via electronic mail ("e-mail") from Mr. Tremble ("BGWW Hardship Letter"). A true and accurate copy of the BGWW Hardship Letter is attached and incorporated as Exhibit "D."

30.     The BGWW Hardship Letter, dated July 23, 2010, provided the reinstatement amount as twelve thousand one dollar and one cent ($12,001.01), and stated that the reinstatement amount was only good thru July 30, 2010, or approximately seven (7) days.

31.     Plaintiffs relying on Mr. Tremble's statements and the BGWW Hardship Letter, continued to take the appropriate steps to obtain a loan thru Mrs. Washington's 401K account in order to reinstate their mortgage loan.

32.     By letter dated July 26, 2010, Plaintiffs received a Notice of Default, Acceleration & Foreclosure Sale from BGWW ("BGWW Foreclosure Notice"). A true and accurate copy of the BGWW Foreclosure Notice is attached and incorporated as Exhibit "E."

33.     The BGWW Foreclosure Notice, among other things, did not provide the Plaintiffs with what action was required to cure the default nor did it give Plaintiffs at least thirty (30) days by which the default could be cured.

34.     Additionally, the BGWW Foreclosure Notice did not inform, notify, or state to the Plaintiffs that the original Key Bank Note had been either lost, misplaced, or destroyed, and was unavailable, pursuant to Virginia Code § 55-59.1.

Washington-Citimortgage Complaint

35. The BGWW Foreclosure Notice included a copy of the Deed of Appointment of Substitute Trustee executed by Defendant Citimortgage ("Citimortgage DOA"). The Citimortgage DOA appointed Defendant Equity as Substitute Trustee in place of Samuel White under the Key Bank DOT.

36. The Citimortgage DOA, dated July 8, 2010, was recorded on August 2, 2010 in the Clerk's Office of the Spotsylvania County Circuit Court, Virginia, as Instrument No. LR201000013166. A true and accurate copy of the Citimortgage DOA is attached and incorporated as Exhibit "F."

37. The BGWW Foreclosure Notice also included a copy of the advertisement of sale ("BGWW Sale Advertisement"). A true and accurate copy of the BGWW Sale Advertisement is attached and incorporated as Exhibit "G."

38. On or about August 6, 2010, Plaintiffs sent Mr. Tremble an e-mail ("Plaintiffs' Status E-mail") updating him with the status of their efforts to access Mrs. Washington's 401K account and that a check would be forthcoming. A true and accurate copy of the Plaintiffs' Status E-mail is attached and incorporated as Exhibit "H."

39. At no time did Mr. Tremble reply to the Plaintiffs' Status E-mail, or contact Plaintiffs, to inform them that it was too late to reinstate the loan and that the pending foreclosure sale was still going to take place.

40. Upon information and belief, Plaintiffs' residence was sold by public sale on August 12, 2010.

Washington-Citimortgage Complaint

41.    On or about August 20, 2010, Plaintiffs found a handwritten note on their door, stating that their residence had been sold at a foreclosure sale.

42.    Until about August 20, 2010, when they discovered the handwritten note on their door, Plaintiffs did not have any knowledge that the previously pending foreclosure was still scheduled and had in fact already taken place on or about August 12, 2010.

43.    On or about August 26, 2010, Defendant Equity by means of a Substitute Trustee's Deed ("Equity Trustee's Deed") granted and conveyed Plaintiffs' residence to Defendant Moridzadeh. The Equity Trustee's Deed was recorded on August 30, 2010 in the Clerk's Office of the Spotsylvania County Circuit Court, Virginia, as Instrument No. LR201000014961. A true and accurate copy of the Equity Trustee's Deed is attached and incorporated as Exhibit "L"

44.    On or about September 2, 2010, Defendant Moridzadeh filed an Unlawful Detainer action against Plaintiffs regarding the Plaintiffs continued possession of the subject property.

45.    On November 4, 2010, the Spotsylvania County General District Court awarded judgment to Defendant Moridzadeh against Plaintiffs regarding Defendant Moridzadeh's Unlawful Detainer action, and granted Defendant Moridzadeh possession of the Plaintiffs' residence.

46.    On November 4, 2010, Plaintiffs noted their appeal of the Spotsylvania County General District Court's judgment of possession in favor of Defendant Moridzadeh.

Washington-Citimortgage Complaint

## FIRST CLAIM FOR RELIEF
## LACK OF LEGAL AUTHORITY – NOT ACTUAL NOTEHOLDER

47.   The allegations of each of the foregoing paragraphs are incorporated herein as if realleged.

48.   The current foreclosure crisis has left many homeowners either wrongfully evicted or struggling to remain in their homes.

49.   In many jurisdictions, the inability of the lender, trustee, or MERS (the Mortgage Electronic Registration Systems, Inc.), to produce the original note in question has become a recent and unfortunate pattern and practice.

50.   Affidavits of lost notes have also become a recent pattern and practice, and many judges in these jurisdictions are putting foreclosure proceedings in abeyance, dismissing them, or setting aside the foreclosure action until such time as the lender, trustee, or MERS can produce the original note.

51.   In many foreclosure cases, the usual reason given for the inability to produce the original note is that the note has been sold off to secondary mortgage market entities, which have bundled the notes, and sold them as part of a mortgage-backed security trust to investors.

52.   Many of these such trusts, or their owners, have become insolvent or have just gone out of business; in short, the original notes have simply vanished and can't be found, or their owners no longer exist or no effort is made to find them.

53.   Due to the fraudulent, careless, or negligent action of lenders, trustees, and mortgage companies, at least five (5) major mortgage companies have frozen some

foreclosures. Additionally, attorneys general from numerous states have joined forces to investigate the matters, and a federal task force is considering criminal charges in the matters.

54.    In general, in order to have standing or legal authority to enforce a promissory note, the person, or entity, must be the holder of the note or a nonholder in possession of the note and have the rights of the actual holder. In other words, the party must have physical possession of the note.

55.    In addition, in a mortgage foreclosure action, the party has to assert rights under the mortgage, that is rights concerning the interest in the underlying debt and not merely the deed of trust.

56.    If a party cannot prove that it is the true and lawful owner of the note, then it lacks the authority to enforce the note and cannot legally foreclose on the property secured by the promissory note.

57.    In this action, on or about June 20, 2005, Key Bank executed a Notice of Assignment, assigning its interest in the Plaintiffs' residence under the Key Bank DOT, along with the Key Bank Note, to Defendant Citimortgage.

58.    In its communications with Plaintiffs, particularly the BGWW Foreclosure Notice, the Citimortgage DOA, the BGWW Sale Advertisement, and the Equity Trustee's Deed, Defendant Citimortgage represented or identified itself as the owner and holder of the Key Bank Note.

59.   Defendant Citimortgage has not provided any substantial or corroborating evidence/proof that it is in fact the owner and holder of the Key Bank Note.

60.   Conversely, Defendant Citimortgage did not inform, notify, or state to the Plaintiffs that the original Key Bank Note had been either lost, misplaced, or destroyed, and was unavailable, pursuant to Virginia Code § 55-59.1; therefore, it can be presumed that if Defendant Citimortgage is the lawful owner and holder of the Key Bank Note, it ought to be in possession of the Key Bank Note.

61.   Being the owner or holder of the Key Bank Note is essential because only the holder of the note can foreclose on the Plaintiffs' residence.

62.   Since the Defendant Citimortgage has not produced the original Key Bank Note, it cannot prove that it is the true and lawful owner of the Key Bank Note. As such, the Defendant Citimortgage was not entitled to foreclose on the Plaintiffs' residence.

63.   Since the Defendant Citimortgage is not the owner and holder of the Key Bank Note, then it was not legally authorized to enforce the Key Bank Note; nor was it authorized to do the following: including but not limited to, appoint a substitute trustee, conduct a foreclosure sale, or transfer the Plaintiffs' residence to Defendant Moridzadeh.

64.   Since Defendant Citimortgage did not have standing or the legal authority to enforce the Key Bank Note, Defendant Equity also did not have standing or the authority to enforce the Key Bank Note on behalf of Defendant Citimortgage.

Washington-Citimortgage Complaint                                    Page 12 of 38

65.   In conducting the foreclosure sale and transferring the Plaintiffs' residence to Defendant Moridzadeh, the actions of both Defendant Citimortgage and Defendant Equity were without legal authority.

66.   The conduct of Defendant Citimortgage and Defendant Equity was without legal authority and the foreclosure sale should be set aside and rendered null and void.

67.   The Equity Trustee's Deed transferring the Plaintiffs' residence to Defendant Moridzadeh was executed without legal authority and should be set aside and rendered null and void.

68.   If Defendant Citimortgage is the true and lawful owner and holder of the Key Bank Note, pursuant to Va. Code § 8.3A-602, Plaintiffs are entitled to have the original Key Bank Note returned to them, within ninety (90) days following payment of the note, showing it as "paid" or "paid in full" since the Plaintiffs' residence has allegedly been foreclosed upon.

69.   If Defendant Citimortgage fails to surrender the original Key Bank Note, there is a presumption that the note is not enforceable, unless proven to be so by Defendant Citimortgage.

70.   Additionally, Defendant Citimortgage, upon the alleged default by Plaintiffs, did not inform, notify, or state to the Plaintiffs that the original Key Bank Note had been either lost, misplaced, or destroyed, and was unavailable, pursuant to Virginia Code § 55-59.1; therefore, it can be presumed that if Defendant Citimortgage is

Washington-Citimortgage Complaint                                    Page 13 of 38

the lawful owner and holder of the Key Bank Note, it ought to be in possession of the Key Bank Note and should be able to produce the original Key Bank Note.

71.    Whereas, if the Key Bank Note is not enforceable, then Defendant Citimortgage could not be the lawful owner and holder of the note and its actions in foreclosing upon Plaintiffs' residence was unlawful and should be set aside as null and void.

72.    Given Defendant Citimortgage and Defendant Equity's representations that Defendant Citimortgage is the owner and holder of the Key Bank Note, Plaintiffs demand that it produce the original Key Bank Note, and not a copy or a lost-note affidavit because Defendant Citimortgage, upon the alleged default by Plaintiffs, did not inform, notify, or state to the Plaintiffs that the original Key Bank Note had been either lost, misplaced, or destroyed, and was unavailable, pursuant to Virginia Code § 55-59.1. Therefore, it can be presumed that if Defendant Citimortgage is the lawful owner and holder of the Key Bank Note, it ought to be in possession of the Key Bank Note and should be able to produce the original Key Bank Note.

73.    Should Defendant Citimortgage fail to produce the original Key Bank Note, Plaintiffs maintain that Defendant Citimortgage is not the lawful owner and holder of the note; that it did not have standing to foreclose upon Plaintiffs' residence; that its actions in foreclosing upon Plaintiffs' residence were without legal authority; that the foreclosure sale be set aside as null and void; and the subsequent transfer of Plaintiffs' residence to Defendant Moridzadeh be set aside as null and void.

74.     Given that Defendant Citimortgage may not be the lawful owner and holder of the Key Bank Note, there remains the possibility that the note is actually held by another person or entity who would be entitled to enforce it against the Plaintiffs.

75.     As such, Plaintiffs demand that Defendant Citimortgage provide to the Plaintiffs, adequate protection against any loss that might occur to them by reason of the claim by another person or entity to enforce the note.

76.     Additionally, should Defendant Citimortgage fail to produce the original Key Bank Note, or should it fail to prove that it is the lawful owner and holder of the Key Bank Note, or should Defendant Citimortgage fail to surrender the original Key Bank Note, or should it fail to meet its burden of proving the enforceability of the Key Bank Note, or should Defendant Citimortgage fail to provide any adequate protection the Court requires, the Plaintiffs request that the Court order Defendant Citimortgage to make an accounting of all of Plaintiffs' payments to Defendant Citimortgage, and to enter a judgment that Defendant Citimortgage return all monies to Plaintiffs from the date of the Key Bank NOA, or from the date of their first payment, whichever is earlier.

77.     In addition, since the Defendant Citimortgage is not the lawful owner and holder of the Key Bank Note, Plaintiffs' request that the Court enter an order that clears and quiets Plaintiffs' title to the Plaintiffs' residence with respect to the parties in this action and all related Deeds of Trust.

78.     Plaintiffs maintain that if Defendant Citimortgage never received the original Key Bank Note from Key Bank, or otherwise possessed the Key Bank Note, it

was not a noteholder and therefore was not entitled to foreclose upon Plaintiffs'
residence.

79.     A party may not transfer its interest under a Deed of Trust without
transferring its interest in the underlying debt or note.  Therefore, Key Bank could not
assign its interest under the Key Bank DOT to Defendant Citimortgage without
transferring its interest in the Key Bank Note as well.

80.     Although Defendant Citimortgage may be able to claim that the Key Bank
NOA and the Key Bank DOT are valid, if Defendant Citimortgage is not the lawful
owner and holder of the Key Bank Note, that is, is not in possession of the Key Bank
Note, it lacked any interest in the Key Bank Note and it therefore was not entitled, nor
did it have standing or legal authority, to enforce the note or foreclose on the Plaintiffs'
residence.

81.     Since Defendant Citimortgage is not the true and lawful owner and holder
of the Key Bank Note, its actions in this matter, and those of Defendant Equity, were
without legal authority and the foreclosure sale, and the subsequent Equity Trustee's
Deed, should be set aside as null and void.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE DEED INSTRUMENT

82.     The allegations of each of the foregoing paragraphs are incorporated
herein as if realleged.

83.     By letter dated July 26, 2010, Plaintiffs received a Notice of Default,
Acceleration & Foreclosure Sale from BGWW ("BGWW Foreclosure Notice").

84.     The BGWW Foreclosure Notice referenced the Key Bank DOT, and the Key Bank Note, and stated that the Plaintiffs had defaulted in the timely payment of the monthly installments required by the Key Bank Note and the Key Bank DOT.

85.     The BGWW Foreclosure Notice stated that the Plaintiffs had failed to cure the default and that all payments due had been accelerated.

86.     The BGWW Foreclosure Notice stated that the holder of the Key Bank Note (presumably Defendant Citimortgage) had requested that Defendant Equity offer the Plaintiffs' residence for sale at public auction.

87.     The BGWW Foreclosure Notice stated that the foreclosure sale would take place on August 12, 2010 at 3:35pm at the front steps of The Circuit Court for Spotsylvania County.

88.     However, the BGWW Foreclosure Notice did not provide, among other things, the Plaintiffs with what action was required to cure the default nor did it give Plaintiffs at least thirty (30) days by which the default could be cured.

89.     In addition, Defendant Citimortgage, upon the alleged default by Plaintiffs, did not inform, notify, or state to the Plaintiffs that the original Key Bank Note had been either lost, misplaced, or destroyed, and was unavailable, pursuant to Virginia Code § 55-59.1.

90.     The Key Bank DOT provides, among other things, that upon a breach or default of the security instrument, prior to acceleration, the lender shall give notice to the borrower specifying: (a) the default; (b) the action required to cure the default; and

(c) a date, not less than thirty (30) days from the date the notice is given to the borrower, by which the default must be cured.

91.     Additionally, the Key Bank DOT provides that the notice shall further inform the borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of the borrower to the acceleration and sale.

92.     In this matter, Defendant Equity, on behalf of Defendant Citimortgage, provided the Plaintiffs with a notice of default, acceleration, and foreclosure sale dated July 26, 2010.

93.     The BGWW Foreclosure Notice did not provide Plaintiffs with what action was required to cure the alleged default, nor did it provide Plaintiffs with at least thirty (30) days from the date the notice was given to them, by which the default had to be cured.

94.     Moreover, the BGWW Foreclosure Notice did not provide Plaintiffs with notice of their right to reinstate after acceleration or the right to bring a court action to assert the non-existence of a default or any other defense to the acceleration and foreclosure sale.

95.     Additionally, Defendant Citimortgage, upon the alleged default by Plaintiffs, did not inform, notify, or state to the Plaintiffs that the original Key Bank Note had been either lost, misplaced, or destroyed, and was unavailable, pursuant to Virginia Code § 55-59.1. Therefore, it can be presumed that if Defendant Citimortgage

Washington-Citimortgage Complaint                                Page 18 of 38

is the lawful owner and holder of the Key Bank Note, it ought to be in possession of the Key Bank Note and should be able to produce the original Key Bank Note.

96. Furthermore, Plaintiffs have reason to believe that Defendant Equity, as trustee, may not have personally appeared or conducted the foreclosure sale of Plaintiffs' residence. This also would be in violation of the Key Bank DOT. *See In re Smith*, 99 B.R. 724 (Bankr. W.D. Va., 1989); *Turk v. Clark*, 193 Va. 744 (1952).

97. Rather, the BGWW Foreclosure Notice only informed the Plaintiffs of the alleged default, that the payments had been accelerated, and that a foreclosure sale was scheduled to take place on August 12, 2010.

98. Upon information and belief, Plaintiffs' residence was sold by public sale on August 12, 2010.

99. The foreclosure sale took place approximately seventeen (17) days after the date of the BGWW Foreclosure Notice.

100. Approximately thirty-one (31) days after the date of the BGWW Foreclosure Notice, on or about August 26, 2010, Defendant Equity by means of a Substitute Trustee's Deed granted and conveyed Plaintiffs' residence to Defendant Moridzadeh.

101. In asserting that Plaintiffs had defaulted under the Key Bank DOT, and thereby accelerating the payments and conducting a foreclosure sale of the Plaintiffs' residence, Defendant Citimortgage and Defendant Equity were required to strictly comply with the terms and provisions of the Key Bank DOT.

102. Defendant Citimortgage and Defendant Equity failed to comply with the Key Bank DOT by not providing Plaintiffs with what action was required to cure the alleged default, and by not providing the Plaintiffs with at least thirty (30) days from the date the notice was given to them, by which the default had to be cured.

103. Defendant Citimortgage and Defendant Equity further violated the terms of the Key Bank DOT by not providing the Plaintiffs with notice of their right to reinstate after acceleration, or the right to bring a court action to assert the non-existence of a default or any other defense to the acceleration and foreclosure sale.

104. Plaintiffs are entitled to have the terms of the Key Bank DOT complied with and in this matter Defendant Citimortgage and Defendant Equity failed to comply with the terms of the Key Bank DOT.

105. In failing to comply with the Key Bank DOT, Defendant Citimortgage and Defendant Equity have violated and breached the terms of the Key Bank DOT

106. The conduct and actions of Defendant Citimortgage and Defendant Equity have resulted in the Plaintiffs' residence being sold at a foreclosure sale.

107. The foreclosure sale of the Plaintiffs' residence was in violation of the terms and provisions of the Key Bank DOT and should be set aside as null and void.

108. The Equity Trustee's Deed transferring the Plaintiffs' residence to Defendant Moridzadeh was the result of the illegal, unauthorized, or non-compliant foreclosure sale and should likewise be set aside and rendered null and void.

109. In addition, since the Defendant Citimortgage and Defendant Equity failed to comply with the terms of the Key Bank DOT and Key Bank Note, and violated

said terms, Plaintiffs' request that the Court enter an order that clears and quiets Plaintiffs' title to the Plaintiffs' residence with respect to the parties in this action and all related Deeds of Trust.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF THE CODE OF VIRGINIA

110. The allegations of each of the foregoing paragraphs are incorporated herein as if realleged.

111. By letter dated July 26, 2010, Plaintiffs received a Notice of Default, Acceleration & Foreclosure Sale from BGWW ("BGWW Foreclosure Notice").

112. The BGWW Foreclosure Notice referenced the Key Bank DOT, and the Key Bank Note, and stated that the Plaintiffs had defaulted in the timely payment of the monthly installments required by the Key Bank Note and the Key Bank DOT; that the Plaintiffs had failed to cure the default and that all payments due had been accelerated; and that the holder of the Key Bank Note (presumably Defendant Citimortgage) had requested that Defendant Equity offer the Plaintiffs' residence for sale at public auction.

113. The BGWW Foreclosure Notice stated that the foreclosure sale would take place on August 12, 2010 at 3:35pm at the front steps of The Circuit Court for Spotsylvania County.

114. The BGWW Foreclosure Notice included a copy of the Deed of Appointment of Substitute Trustee executed by Defendant Citimortgage, and appointed Defendant Equity as Substitute Trustee in place of Samuel White under the Key Bank DOT.

Washington-Citimortgage Complaint                    Page 21 of 38

115.   The BGWW Foreclosure Notice also included a copy of the advertisement of sale ("BGWW Sale Advertisement").

116.   The BGWW Sale Advertisement stated the date, time, and place of the foreclosure sale but did not mention when the foreclosure advertisement was published (or to be published), nor did it specify in what newspaper the advertisement was placed or scheduled to be published in.

117.   Additionally, Defendant Citimortgage, upon the alleged default by Plaintiffs, did not inform, notify, or state to the Plaintiffs that the original Key Bank Note had been either lost, misplaced, or destroyed, and was unavailable, pursuant to Virginia Code § 55-59.1. Therefore, it can be presumed that if Defendant Citimortgage is the lawful owner and holder of the Key Bank Note, it ought to be in possession of the Key Bank Note and should be able to produce the original Key Bank Note.

118.   Under Virginia law, the foreclosure sale must be conducted in strict compliance with the advertising and newspaper publication requirements.

119.   Virginia Code § 55-59.2 requires that the foreclosure sale take place within a prescribed time period after publication. Specifically, the time period in which a foreclosure sale must take place is no earlier than eight (8) days following the first foreclosure sale advertisement and no more than thirty (30) days following the last advertisement.

120.   The BGWW Sale Advertisement did not provide when the foreclosure advertisement was published, nor did it even specify the newspaper it was being published in.

Washington-Citimortgage Complaint

121.   As such, Plaintiffs are unsure and do now know when, or even if, the BGWW Sale Advertisement was published.

122.   Defendant Citimortgage and Defendant Equity have not provided Plaintiffs with any proof of when or if the BGWW Sale Advertisement was published.

123.   In asserting that Plaintiffs had defaulted under the Key Bank DOT, and thereby accelerating the payments and conducting a foreclosure sale of the Plaintiffs' residence, Defendant Citimortgage and Defendant Equity were required to strictly comply with the advertising and newspaper publication requirements under Virginia Code § 55-59.2.

124.   Failure to comply with the requirements under Virginia Code § 55-59.2, or foreclosure sales conducted in violation of said code section, renders the foreclosure sale void and ineffectual. *See Deep v. Rose*, 234 Va. 631 (1988). As such, no title, legal or equitable, passes to the purchaser. *Id.*

125.   Upon information and belief, Plaintiffs' residence was sold by public sale on August 12, 2010.

126.   The foreclosure sale took place approximately seventeen (17) days after the date of the BGWW Foreclosure Notice; however, Plaintiffs have not received any notice, evidence, or proof that the sale was advertised and took place as required by Virginia Code § 55-59.2.

127.   Plaintiffs are entitled to, among other things, have the advertising and newspaper publication provisions of the Virginia Code strictly complied with and in

Washington-Citimortgage Complaint                    Page 23 of 38

this matter Defendant Citimortgage and Defendant Equity failed to strictly comply with those provisions.

128.   In failing to comply with the Virginia Code, Defendant Citimortgage and Defendant Equity have violated and breached Virginia law.

129.   Plaintiffs maintain that if Defendant Citimortgage and Defendant Equity failed to comply with the mandatory advertising and newspaper publication provisions of Virginia Code § 55-59.2, then the foreclosure sale was made in violation of Virginia law and is null and void.

130.   Plaintiffs request that Defendant Citimortgage and Defendant Equity provide proof that the BGWW Sale Advertisement was published in strict compliance with the statutory provisions.

131.   Absent such proof, Plaintiffs maintain that the foreclosure sale was in violation of Virginia law and should be rendered null and void.

132.   The conduct and actions of Defendant Citimortgage and Defendant Equity have resulted in the Plaintiffs' residence being sold at a foreclosure sale.

133.   The foreclosure sale of the Plaintiffs' residence was in violation of the provisions of the Virginia Code, as well as Virginia law, and should be set aside as null and void.

134.   The Equity Trustee's Deed transferring the Plaintiffs' residence to Defendant Moridzadeh was the result of the illegal, unauthorized, or non-compliant foreclosure sale and should likewise be set aside and rendered null and void.

135.   Furthermore, Plaintiffs have reason to believe that Defendant Equity, as trustee, may not have personally appeared or conducted the foreclosure sale of Plaintiffs' residence. This also would be in violation of the Virginia Code, as well as the Key Bank DOT. *See In re Smith,* 99 B.R. 724 (Bankr. W.D. Va., 1989); *Turk v. Clark,* 193 Va. 744 (1952).

136.   In addition, Virginia Code § 55-59 provides that the trustee and lender must comply with the terms of the deed of trust.

137.   In this action, mainly as stated in paragraphs 82-109 above, Defendant Citimortgage and Defendant Equity have failed to comply with the Key Bank DOT.  As such, the foreclosure sale should be rendered null and void and the subsequent transfer of the Plaintiffs' residence to Defendant Moridzadeh should be rendered null and void as well.

138.   In addition, since the Defendant Citimortgage and Defendant Equity failed to comply with the provisions of the Virginia Code, as well as the terms of the Key Bank DOT and Key Bank Note; and violated said provisions and terms, Plaintiffs' request that the Court enter an order that clears and quiets Plaintiffs' title to the Plaintiffs' residence with respect to the parties in this action and all related Deeds of Trust.

**FOURTH CLAIM FOR RELIEF**
**BREACH OF CONTRACT**

139.   The allegations of each of the foregoing paragraphs are incorporated herein as if realleged.

Washington-Citimortgage Complaint                                            Page 25 of 38

140.    Defendant Citimortgage had a duty to the Plaintiffs of good faith, loyalty, reasonable care, diligence, accounting and full disclosure, and to engage in fair dealings regarding the Key Bank DOT and the Key Bank Note.

141.    Defendant Equity, as trustee for Defendant Citimortgage, had a fiduciary duty to the Plaintiffs of undivided loyalty, good faith, obedience, reasonable care, diligence, accounting and full disclosure, impartiality, and to engage in fair dealings regarding the Key Bank DOT and the Key Bank Note.

142.    Notwithstanding said duties, Defendant Citimortgage and Defendant Equity breached the Key Bank DOT and the Key Bank Note by commission or omission of the acts detailed above.  Said actions include, but are not limited to the following:

(a) misrepresenting or failing to disclose material information concerning the current legal status of the Key Bank Note, the current true and lawful owner and holder of said Note, as well as the status, terms, or existence of the original Key Bank Note;

(b) misrepresenting or failing to disclose material information concerning the status of the terms of the Key Bank DOT and the required notices to be provided under said Deed of Trust;

(c) misrepresenting, fraudulently, or intentionally deceiving Plaintiffs into believing that their loan account would be reinstated and that there would be no foreclosure sale of the Plaintiffs' residence;

(d) conducting a foreclosure sale of the Plaintiffs' residence in violation of the Key Bank DOT and the Key Bank Note.

Washington-Citimortgage Complaint

(e) conducting a foreclosure sale of the Plaintiffs' residence in violation of

Virginia law; and

(f) failing to perform its contractual obligations under the Key Bank DOT

or Key Bank Note.

143. As a direct and proximate result of Defendant Citimortgage and Defendant Equity's breach of contract, the Plaintiffs' residence was sold at a foreclosure sale. The foreclosure sale of the Plaintiffs' residence was in violation of the Key Bank DOT, the Key Bank Note, as well as Virginia law, and should be set aside as null and void.

144. The Equity Trustee's Deed transferring the Plaintiffs' residence to Defendant Moridzadeh occurred due to the illegal, unauthorized, or non-compliant foreclosure sale, which was the result of the breach of contract by Defendant Citimortgage and Defendant Equity, and should likewise be set aside and rendered null and void.

145. Plaintiffs have incurred damages, including substantially increased costs and expenses, the costs of mitigating their costs and expenses, the potential loss of the use and enjoyment of their residence, emotional distress, inconvenience, consequential damages, attorneys' fees, and other injury and damages.

146. In this action, as stated above, Defendant Citimortgage and Defendant Equity have failed to comply with the Key Bank DOT, the Key Bank Note, and Virginia law. As such, the foreclosure sale should be rendered null and void and the subsequent

transfer of the Plaintiffs' residence to Defendant Moridzadeh should be rendered null and void as well.

147.   In addition, since the Defendant Citimortgage and Defendant Equity failed to comply with the provisions of the Virginia Code, as well as the terms of the Key Bank DOT and Key Bank Note, and violated said provisions and terms, Plaintiffs' request that the Court enter an order that clears and quiets Plaintiffs' title to the Plaintiffs' residence with respect to the parties in this action and all related Deeds of Trust.

## FIFTH CLAIM FOR RELIEF
### FRAUD

148.   The allegations of each of the foregoing paragraphs are incorporated herein as if realleged.

149.   Defendant Citimortgage and Defendant Equity made false material representations to Plaintiffs in relation to the Key Bank DOT and Key Bank Note. Said representations include, but are not limited to the following:

> (a) misrepresenting or failing to disclose material information concerning the current legal status of the Key Bank Note, the current true and lawful owner and holder of said Note, as well as the status, terms, or existence of the original Key Bank Note;

> (b) misrepresenting or failing to disclose material information concerning the status of the terms of the Key Bank DOT and the required notices to be provided under said Deed of Trust;

Washington-Citimortgage Complaint

(c) misrepresenting, fraudulently, or intentionally deceiving Plaintiffs into believing that their loan account would be reinstated and that there would be no foreclosure sale of the Plaintiffs' residence;

(d) that Defendant Citimortgage and Defendant Equity had engaged in honest and fair dealings with Plaintiffs;

(e) conducting a foreclosure sale of the Plaintiffs' residence in violation of the Key Bank DOT and the Key Bank Note.

(f) submitting documents to Plaintiff regarding the Key Bank DOT and Key Bank Note with erroneous, fraudulent, misleading, or incorrect information; and

(g) conducting a foreclosure sale of the Plaintiffs' residence in violation of Virginia law.

150.    Defendant Citimortgage and Defendant Equity intentionally and knowingly made these false representations to Plaintiffs with the intent to mislead Plaintiffs.

151.    Plaintiffs materially relied on these representations to their detriment.

152.    That as a result of said reliance, Plaintiffs were caused to suffer damage, harm, and injury; particularly, the Plaintiffs' residence was sold at a foreclosure sale.

153.    As a direct and proximate result of Defendant Citimortgage and Defendant Equity's fraud, Plaintiffs have suffered, continue to suffer, and will in the future suffer pain, mental suffering, inconvenience, have been hampered in the conduct of their business and affairs, and have incurred damages, including substantially increased costs and expenses, the costs of mitigating their costs and expenses, the

Washington-Citimortgage Complaint                                   Page 29 of 38

potential loss of the use and enjoyment of their residence, emotional distress, inconvenience, consequential damages, litigation costs, attorneys' fees, and other injury and damages.

154.    As a direct and proximate result of Defendant Citimortgage and Defendant Equity's fraudulent conduct, the Plaintiffs' residence was sold at a foreclosure sale. The foreclosure sale of the Plaintiffs' residence was fraudulent, in violation of the Key Bank DOT, the Key Bank Note, as well as Virginia law, and should be set aside as null and void.

155.    The Equity Trustee's Deed transferring the Plaintiffs' residence to Defendant Moridzadeh occurred due to the fraudulent, illegal, unauthorized, or non-compliant foreclosure sale, which was the result of the fraudulent conduct of Defendant Citimortgage and Defendant Equity, and should likewise be set aside and rendered null and void.

156.    In this action, as stated above, Defendant Citimortgage and Defendant Equity engaged in fraudulent conduct, failed to comply with the Key Bank DOT, the Key Bank Note, and Virginia law. As such, the foreclosure sale should be rendered null and void and the subsequent transfer of the Plaintiffs' residence to Defendant Moridzadeh should be rendered null and void as well.

157.    In addition, due to the fraudulent actions of the Defendant Citimortgage and Defendant Equity, as well as failing to comply with the provisions of the Virginia Code, the terms of the Key Bank DOT and the Key Bank Note, and violating said provisions and terms, Plaintiffs' request that the Court enter an order that clears and

quiets Plaintiffs' title to the Plaintiffs' residence with respect to the parties in this action and all related Deeds of Trust.

## SIXTH CLAIM FOR RELIEF
## VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

158.   The allegations of each of the foregoing paragraphs are incorporated herein as if realleged.

159.   Defendant Citimortgage and Defendant Equity made false or misleading material representations to Plaintiffs and engaged in unfair or unconscionable actions in collecting or attempting to collect the alleged debt of the Plaintiffs in relation to the Key Bank DOT and Key Bank Note. Said representations and actions include, but are not limited to the following:

(a) misrepresenting or failing to disclose material information concerning the current legal status of the Key Bank Note, the current true and lawful owner and holder of said Note, as well as the status, terms, or existence of the original Key Bank Note;

(b) misrepresenting or failing to disclose material information concerning the status of the terms of the Key Bank DOT and the required notices to be provided under said Deed of Trust;

(c) misrepresenting, fraudulently, or intentionally deceiving Plaintiffs into believing that their loan account would be reinstated and that there would be no foreclosure sale of the Plaintiffs' residence;

(d) that Defendant Citimortgage and Defendant Equity had engaged in honest and fair dealings with Plaintiffs;

(e) conducting a foreclosure sale of the Plaintiffs' residence in violation of the Key Bank DOT and the Key Bank Note.

(f) submitting documents to Plaintiff regarding the Key Bank DOT and Key Bank Note with erroneous, fraudulent, misleading, or incorrect information; and

(g) conducting a foreclosure sale of the Plaintiffs' residence in violation of Virginia law.

160.   Defendant Citimortgage and Defendant Equity intentionally and knowingly made these false, deceitful, or misleading representations to Plaintiffs with the intent to mislead Plaintiffs.

161.   Defendant Citimortgage and Defendant Equity used unfair or unconscionable actions to collect or attempt to collect the alleged debt of the Plaintiffs in relation to the Key Bank DOT and Key Bank Note.

162.   Plaintiffs materially relied on these representations and collection actions to their detriment.

163.   That as a result of said reliance, Plaintiffs were caused to suffer damage, harm, and injury; particularly, the Plaintiffs' residence was sold at a foreclosure sale.

164.   Defendant Citimortgage and Defendant Equity, by committing fraud, being deceitful, engaging in unfair or unconscionable collection actions, making false promises, or making false or misleading representations to Plaintiffs in relation to the

Washington-Citimortgage Complaint                                   Page 32 of 38

Key Bank DOT and the Key Bank Note, violated the Federal Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 *et seq.*

165. As a direct and proximate result of Defendant Citimortgage and Defendant Equity's violation of the FDCPA, Plaintiffs have suffered, continue to suffer, and will in the future suffer pain, mental suffering, inconvenience, have been hampered in the conduct of their business and affairs, and have incurred damages, including compensatory damages, statutory damages, consequential damages, substantially increased costs and expenses, the costs of mitigating their costs and expenses, the potential loss of the use and enjoyment of their residence, emotional distress, inconvenience, litigation costs, attorneys' fees, and other injury and damages.

166. As a direct and proximate result of Defendant Citimortgage and Defendant Equity's violation of the FDCPA, the Plaintiffs' residence was sold at a foreclosure sale. The foreclosure sale of the Plaintiffs' residence was fraudulent, in violation of the Key Bank DOT, the Key Bank Note, Virginia law, and the FDCPA and should be set aside as null and void.

167. The Equity Trustee's Deed transferring the Plaintiffs' residence to Defendant Moridzadeh occurred due to the fraudulent, illegal, unauthorized, or non-compliant foreclosure sale, which was the result of the violation of the FDCPA by the Defendant Citimortgage and Defendant Equity, and should likewise be set aside and rendered null and void.

168. In this action, as stated above, Defendant Citimortgage and Defendant Equity engaged in fraudulent conduct, failed to comply with the Key Bank DOT, the

Key Bank Note, Virginia law, and the FDCPA. As such, the foreclosure sale should be rendered null and void and the subsequent transfer of the Plaintiffs' residence to Defendant Moridzadeh should be rendered null and void as well.

169. In addition, due to the FDCPA violation of the Defendant Citimortgage and Defendant Equity, as well as failing to comply with the provisions of the Virginia Code, the terms of the Key Bank DOT and the Key Bank Note, and violating said provisions and terms, Plaintiffs' request that the Court enter an order that clears and quiets Plaintiffs' title to the Plaintiffs' residence with respect to the parties in this action and all related Deeds of Trust.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Craig R. Washington and April Washington, respectfully request that this Court enter judgment in their favor and against Defendant Citimortgage, Defendant Equity, and Defendant Moridzadeh, jointly and severally, on the above-stated claims, and in addition that this Court:

(1)   Issue a declaratory judgment, declaring Plaintiffs' ownership in the subject property as superior to that of the Defendants and that the Defendants have no valid claim or right to the subject property;

(2)   Issue a declaratory judgment, setting aside the foreclosure sale of Plaintiffs' residence and rendering the foreclosure sale as null and void;

(3)   Issue a declaratory judgment, setting aside the Equity Trustee's Deed that transferred Plaintiffs' residence to Defendant Moridzadeh and rendering the deed and transfer as null and void;

Washington-Citimortgage Complaint                                        Page 34 of 38

(4)     Order Defendant Citimortgage to provide to the Plaintiffs, adequate protection against any loss that might occur to them by reason of the claim by another person or entity to enforce the Key Bank Note;

(5)     Issue a judgment regarding the legal standing or authority of Defendant Citimortgage to enforce the Key Bank Note;

(6)     Issue, pending a hearing on Plaintiffs' request for permanent relief, a preliminary injunction restraining and preventing the Defendants and their agents, successors, employees, attorneys, and all persons acting on their behalf or at their direction from:

> a.     Transferring, selling, using, disposing of, or otherwise alienating the Plaintiffs' residence ("subject property");

> b.     Staying the judgment of the Spotsylvania County General District Court granting possession of the Plaintiffs' residence to Defendant Moridzadeh regarding Defendant Moridzadeh's Unlawful Detainer action; and

> c.     Staying the Plaintiffs' appeal of the Spotsylvania County General District Court's judgment of possession in favor of Defendant Moridzadeh.

(7)     Issue a declaratory judgment or order that removes any cloud on Plaintiffs' residence, and that clears and quiets Plaintiffs' title to the Plaintiffs' residence with respect to the parties in this action and all related Deeds of Trust;

Washington-Citimortgage Complaint

(8)     Order Defendant Citimortgage to make an accounting of all of Plaintiffs' payments to Defendant Citimortgage, and to enter a judgment that Defendant Citimortgage return all monies to Plaintiffs from the date of the Key Bank NOA, or from the date of their first payment, whichever is earlier;

(9)     Award Plaintiffs with compensatory damages in an amount to be determined at trial, but expected to be in excess of One Hundred Thousand dollars ($100,000.00), costs of this action, including expert fees if any;

(10)    Award Plaintiffs with punitive damages in the amount of Three Hundred Thousand dollars ($300,000.00);

(11)    Award Plaintiffs with statutory damages to the fullest extent permitted by law;

(12)    Award Plaintiffs their attorneys' fees based on the fraudulent and egregious conduct of the Defendant Citimortgage and Defendant Equity, as well as to the fullest extent permitted by the Federal Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 *et seq.*; and in addition,

(13)    Award such other and further relief to Plaintiffs as the Court deems proper and that may be just and equitable in the circumstances.


## JURY DEMAND

Plaintiffs, Craig R. Washington and April Washington, demand a trial by jury.

Respectfully submitted,                    Respectfully submitted,

CRAIG R. WASHINGTON                         APRIL WASHINGTON

By:
Lamont D. Hamilton, VSB# 78193
Eboni T. Hamilton, VSB# 79344
The Hamilton Firm, PLC
10908 Courthouse Rd.
Ste. 102 #235
Fredericksburg, VA 22408
Telephone: 540.455.7791
Facsimile:  888.711.8223
Counsel for Plaintiffs

COMMONWEALTH OF VIRGINIA:

CITY/COUNTY OF _Stafford_, to-wit:

I, _Christine Williams_, a Notary Public in and for the jurisdiction aforesaid,

do hereby certify that the foregoing *Complaint* was sworn to and acknowledged before

me by CRAIG R. WASHINGTON.

Given under my hand this _12_ day of _November_, 2010.

NOTARY PUBLIC

My commission expires: _January 31, 2014_

Registration No: _171710_.

CHRISTINE G. WILLIAMS
Notary Public
Commonwealth of Virginia
171710
My Commission Expires Jan 31, 2014

Washington-Citimortgage Complaint                    Page 37 of 38

COMMONWEALTH OF VIRGINIA:

CITY/COUNTY OF ___Stafford___, to-wit:

___Christine G Williams___, a Notary Public in and for the jurisdiction aforesaid,

do hereby certify that the foregoing *Complaint* was sworn to and acknowledged before

me by APRIL WASHINGTON.

Given under my hand this __12__ day of __November__, 2010.

___Christine G Williams___
NOTARY PUBLIC

My commission expires: __January 31, 2014__

Registration No: ___171710___.

CHRISTINE G. WILLIAMS
Notary Public
Commonwealth of Virginia
171710
My Commission Expires Jan 31, 2014

Washington-Citimortgage Complaint

Page 38 of 38

A Copy Teste:
Christopher M. Jett, Clerk
By:_____ Deputy Clerk