IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CRAIG R. WASHINGTON, *et al.*,

Plaintiffs

v.                    Civil Action No. 3:10-CV-887-JAG

CITIMORTGAGE, INC., *et al.*,

Defendants.

## MEMORANDUM OPINION

In this case, Plaintiffs Craig and April Washington seek to set aside the foreclosure sale of their home. As detailed below, they seek various forms of declaratory and injunctive relief, as well as money damages.

The defendants have filed dispositive motions. This matter is now before the Court on the motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by CitiMortgage, Inc. ("CitiMortgage") and Equity Trustees, LLC ("Equity") and the motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) filed by Mansour Moridzadeh ("Moridzadeh," collectively "Defendants"). Defendants challenge each of the six grounds for relief asserted by the Washingtons.

The Court has serious doubts about the plaintiffs' ability to prevail in this matter, in light of documents proffered by the defendants that seem to demonstrate that the foreclosure went strictly by the books. At this procedural stage, however, the Court cannot consider some of the documents produced by the defendants, and the plaintiffs' case will go forward on a few of their

theories. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss.

## I. Standard of Review

This matter comes before the Court on two motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and on a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The Court will apply the familiar standards in considering the allegations in the Complaint. A motion to dismiss tests the sufficiency of a complaint; it does not resolve contested factual issues. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001).

To survive a motion to dismiss, a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S., 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief, that is, the "plausibility of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 540 U.S. at 545, to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Although the Court must accept as true all well-pleaded factual allegations, the same is not true for legal

conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Matkari*, 7 F.3d at 1134; *see also Martin*, 980 F.2d at 952.

In reviewing a motion for judgment on the pleadings under Rule 12(c), the Court utilizes the same standard as it would on a motion under Rule 12(b)(6). *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In considering a motion for judgment on the pleadings, the Court assumes the facts alleged in the complaint are true and draws all reasonable factual inferences in the nonmovant's favor. *Edwards*, 178 F.3d at 244.

The defendants have submitted various documents outside the pleadings. They consist primarily of records that appear genuine and, if so, likely foreclose any relief for the plaintiffs. The plaintiffs, however, dispute the authenticity of the documents. According to the Fourth Circuit, "[o]rdinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the [12(c)] motion is converted into one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (internal citations omitted). There are exceptions to this rule: "Specifically, a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Id.* (internal citations omitted); *see also Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) ("[A court] may consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and

authentic."). The exceptions to the rule, however, are not so broad as to allow the Court to consider all the documents tendered in this case.

## II. Statement of Material Facts

Applying the standards discussed above, the Court has concluded that the following narrative represents the material facts for purposes of resolving the motions to dismiss and the motion for judgment on the pleadings.

This case involves the Washingtons' home. The Washingtons held the property as tenants by the entirety. (Compl. ¶ 12.) In 2002, they executed a promissory note for $130,000, payable to Key Bank USA, and secured by a deed of trust on the home with Key Bank as the beneficiary.[1] In 2005, Key Bank assigned the promissory note and its interest in the Washingtons' home to Citifinancial Mortgage Company, Inc. (*Id.* ¶ 16.)

The Washingtons fell behind in their mortgage payments. In early 2010, they sought a hardship letter from CitiMortgage, which would allow April Washington to use funds in her retirement account to bring the loan current. (*Id.* ¶ 22.) CitiMortgage would not provide a hardship letter. (*Id.*)

In the summer of 2010, the Washingtons apparently became seriously concerned about their default. On July 16, 2010, April Washington contacted Stephen Wood ("Wood") and Josh Tremble ("Tremble"), employees of the law firm Bierman, Geesing, Ward & Wood, L.L.C. ("BGWW"), regarding the status of the mortgage. (*Id.* ¶ 19.) Wood and Tremble were counsel for Equity. (*Id.* ¶ 20.) The plaintiffs allege that Tremble, on behalf of CitiMortgage and Equity, "agreed to provide the Plaintiffs with a hardship letter and that any pending foreclosure sale would be postponed/stalled so that the Plaintiffs could get the loan" from April Washington's retirement account. (*Id.* ¶ 24.) The plaintiffs also allege that Tremble promised that the

---

[1] Equity is the substitute trustee on the deed of trust.

Washingtons could repay the past due payments and reinstate the loan to current status. (*Id.* ¶ 25.) At no time during the conversation did Tremble inform or warn April Washington that the property was still subject to any pending foreclosure proceedings. (*Id.* ¶ 28.)

On July 23, 2010, the Washingtons received the hardship letter, which provided the reinstatement amount of $12,001.01 and stated that the reinstatement amount applied only until July 30, 2010, approximately 7 days. (*Id.* ¶ 30.) The Washingtons continued to try to get the money from April Washington's 401(k) account in order to reinstate their mortgage.

By letter dated July 26, 2010, the Washingtons received a "Notice of Default, Acceleration & Foreclosure Sale" ("Foreclosure Notice") from BGWW. (*Id.* ¶ 32.) The Foreclosure Notice did not tell them how to cure the default nor did it give them at least 30 days to cure the default. (*Id.* ¶ 33.) The Washingtons allege that the Foreclosure Notice did not inform them that the original promissory note was unavailable, as required by Virginia Code § 55-59.1. The Foreclosure Notice included a copy of the Deed of Appointment of Substitute Trustee, naming Equity as substitute trustee. The Foreclosure Notice also included a copy of the advertisement of the foreclosure sale. (*Id.* ¶ 37.)

On or about August 6, 2010, the Washingtons sent an email to Tremble updating him on their efforts to access April Washington's 401(k) account and informing him that a check would be forthcoming. (*Id.* ¶ 38.) Tremble did not reply to this email or otherwise contact the Washingtons to inform them that it was too late to reinstate the loan and that the pending foreclosure sale would still take place. (*Id.* ¶ 39.)

The Washingtons' residence was sold by public sale on August 12, 2010. (*Id.* ¶ 40.) They found out about the sale on about August 20, 2010, when they discovered a handwritten note on their door, stating that their residence had been sold at a foreclosure sale. (*Id.* ¶¶ 41-42.)

On or about August 26, 2010, Equity sold the Washingtons' residence to Moridzadeh. (*Id.* ¶ 43.) The deed was recorded on August 30, 2010, in the Clerk's Office of the Spotsylvania County Circuit Court. (*Id.*)

On September 2, 2010, Moridzadeh filed an unlawful detainer action against the Washingtons to get possession of the property. (*Id.* ¶ 44.) On November 4, 2010, the Spotsylvania County General District Court granted judgment to Moridzadeh in the unlawful detainer action and granted him possession of the house. (*Id.* ¶ 45.) On the same day, the Washingtons noted their appeal of the General District Court's decision. (*Id.* ¶ 46.) As of the filing of the instant complaint, the plaintiffs had not perfected their appeal.

### III. Counts in the Complaint

The plaintiffs filed suit in the Circuit Court of Spotsylvania County on November 12, 2010. CitiMortgage removed the instant matter to this Court on the grounds of federal question jurisdiction on December 10, 2010.

The Washington's Complaint contains six counts, several with overlapping legal theories and requests for relief. The following is a summary of each count:

*Count One.* The Washingtons contend that CitiMortgage is not the owner and holder of the promissory note and, therefore, was not legally authorized to enforce the promissory note or to transfer the residence to Moridzadeh. They also contend that CitiMortgage should hold them harmless from any collection efforts by the true holder of the note, whoever that may be. They argue that CitiMortgage should also return all payments made by them, assuming that CitiMortgage is not the noteholder. (*Id.* ¶¶ 47-81.)

*Count Two.* The Washingtons claim that CitiMortgage and Equity violated the terms of the deed of trust by failing to comply with the pre-acceleration notice requirements. (*Id.* ¶¶ 88-95.)

*Count Three.* The Washingtons claim that CitiMortgage violated section 55-59.2 of the Virginia Code by failing to advertise the sale properly. (*Id.* ¶¶ 110-38.)

*Count Four.* The Washingtons allege that CitiMortgage and Equity breached a contract with the Washingtons and violated their fiduciary duty regarding the deed of trust and the promissory note. Specifically, they contend that Defendants breached their duty of good faith and fair dealing, misrepresented various facts, and conducted the foreclosure sale in violation of the terms of the deed of trust and of Virginia law. (*Id.* ¶¶ 139-47.)

*Count Five.* The Washingtons allege fraud on the grounds that CitiMortgage and Equity made false material representations to the Washingtons regarding the "status" and terms of the promissory note and the deed of trust, by telling the Washingtons they had engaged in honest and fair dealings, by conducting the foreclosure sale in violation of the terms of the deed of trust and of Virginia law, and by submitting erroneous documents. (*Id.* ¶¶ 148-57.)

*Count Six.* Finally, the plaintiffs allege that CitiMortgage and Equity violated the Federal Fair Debt Collection Practices Act ("FDCPA") by making false and misleading material representations to the Washingtons, by conducting the foreclosure sale in violation of the terms of the contract and of Virginia law, by submitting erroneous documents, and by engaging in unfair and unconscionable actions in collecting or attempting to collect a debt related to the promissory note and deed of trust.[2] (*Id.* ¶¶ 158-69.)

---

[2] The plaintiffs do not allege any wrongdoing by Moridzadeh. He is apparently a defendant solely for the purpose of providing relief to the plaintiffs.

The Washingtons request the following, somewhat duplicative, relief: (1) a declaratory judgment that the Washingtons' ownership interest in the property is superior to that of Defendants and that Defendants have no valid claim or right to the property; (2) a declaratory judgment setting aside as null and void the foreclosure sale; (3) a declaratory judgment setting aside Equity's deed that transferred the Washingtons' residence to Moridzadeh and rendering that deed and transfer null and void; (4) an order to CitiMortgage to protect the Washingtons against any loss that might occur to them by reason of the claim by another person or entity seeking to enforce the promissory note; (5) a declaratory judgment of the legal standing of CitiMortgage to enforce the promissory note; (6) a preliminary injunction protecting their interest in the property and staying Morizadeh's unlawful detainer action;[3] (7) a declaratory judgment or order removing any cloud on their title; (8) an order requiring CitiMortgage to return all payments to the Washingtons from the date of the promissory note of assignment or from the date of their first payment, whichever is earlier;[4] (9) an award of compensatory damages expected to exceed $100,000 plus costs of the action, including expert fees; (10) an award of punitive damages of $300,000; (11) an award to the Washingtons of statutory damages under the FDCPA; (12) an award of attorneys' fees as permitted under FDCPA; and, (13) in case they left anything out of their first twelve demands, such other relief as the Court deems appropriate.

In addition, the Washingtons seek leave to file an amended complaint, should the Court find that they have not adequately pled any of their claims. The plaintiffs' original complaint is thirty-eight pages long and contains 169 numbered paragraphs plus a lengthy request for relief.

---

[3] The plaintiffs have not brought their request for a preliminary injunction on for a hearing, and the request is deemed waived. In any event, this Court is reluctant to interfere with pending state court proceedings.

[4] In essence, this is a request for a free mortgage.

It is clear that the plaintiffs have put their best foot forward, and the Court cannot see how they could possibly plead anything else in an amended complaint.

## IV. The Defendants' Dispositive Motions

CitiMortgage filed a timely motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. CitiMortgage moves to dismiss the Washingtons' claims on the grounds that (1) CitiMortgage is the true and lawful owner of the promissory note; (2) CitiMortgage adhered to the terms of the deed of trust; (3) Equity complied with the Virginia Code in advertising the foreclosure sale; (4) CitiMortgage did not breach a fiduciary duty owed to the Washingtons; (5) the Washingtons failed to plead fraud with specificity; and (6) the FDCPA does not apply to CitiMortgage. In addition, CitiMortgage argues that the Complaint does not state a claim for damages for emotional distress and that the Washingtons are not entitled to recover attorney's fees or punitive damages.

Equity also filed a motion to dismiss the Complaint pursuant to Rule 12(b)(6). Equity's arguments in support of its motion to dismiss mirror those of CitiMortgage. Equity argues that the Washingtons failed to sufficiently allege (1) that the advertisement of the foreclosure sale was invalid; (2) that CitiMortgage and Equity failed to abide by the deed of trust; (3) that CitiMortgage and Equity lacked the authority to foreclose on the home; (4) that they have a plausible claim to quiet title; (5) that Equity breached a fiduciary duty owed to the Washingtons; (6) that the plaintiffs have a plausible claim for fraud; and (7) that the plaintiffs have a claim against Equity under the FDCPA.

Moridzadeh filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Moridzadeh moves to dismiss the Washingtons' claims on the grounds that the foreclosure sale was properly conducted and that the Washingtons' claim to

quiet title must be dismissed. Moridzadeh's arguments rely on the same grounds as CitiMortgage and Equity.

As explained below, the Court finds that some of the Washingtons' claims for relief barely survive the defendants' dispositive motions. Specifically, the Court finds that parts of Count One, Two, and Five may go forward, albeit in pared down form. Courts Three, Four, and Six are dismissed in their entirety.

### V. Discussion

*A.     Count One*

The Washingtons argue that, because CitiMortgage is not the owner and holder of the promissory note, CitiMortgage is not legally authorized to enforce the promissory note. (Compl. ¶ 63.) The Washingtons assert three grounds for their claim. First, the Washingtons question the authenticity and validity of the promissory note held by CitiMortgage. This argument is clearly dilatory. CitiMortgage presented the note at the hearing on the motion to dismiss, and this argument has been properly abandoned by the plaintiffs.

The Washingtons' second argument fares no better. They contend that, because the deed of trust and the promissory note were not transferred to CitiMortgage simultaneously, CitiMortgage cannot exercise rights under the deed of trust. The Washingtons cite no authority for this position. As this Court has recently held: "Under Virginia law, when a note is assigned, the deed of trust securing that debt necessarily runs with it." *Ruggia v. Washington Mut.*, 719 F. Supp. 2d 642, 647 (E.D. Va. 2010). The Court rejects the plaintiffs' unfounded theory.

Third, the Washingtons question the relationship between the entities CitiMortgage and Citifinancial Mortgage, Inc. They admit that the original lender assigned the note and deed of trust to Citifinancial Mortgage Company, Inc. (Compl. ¶ 16), but the Washingtons state that they

"do not have any substantial evidence or proof that Defendant [CitiMortgage] is in fact the actual lawful owner and holder of the original Key Bank Note." (Pls. Mem. 6.) In essence, they claim that CitiMortgage and Citifinancial are separate entities, and CitiMortgage cannot foreclose on the mortgage.[5]

At oral argument, CitiMortgage stated that, as a result of a merger, CitiMortgage is the successor in interest to Citifinancial Mortgage Company, Inc. Apparently, the plaintiffs now insist that Defendants prove this merger. Since this requires review of evidence outside the complaint, the plaintiffs avoid dismissal for the time being.

Because verifying the merger between CitiMortgage and Citifinancial requires the Court to look outside the pleadings, the Court DENIES Defendants' motions to dismiss Count One. Other than this single factual dispute, Count One is dismissed. The plaintiffs may only litigate the issue of whether CitiMortgage and Citifinancial are the same entity. The Court, however, cautions the plaintiffs against pursuing this claim if it turns out to be clearly without merit.

B.     Count Two

The Washingtons allege that CitiMortgage and Equity violated the terms of the deed of trust by failing to provide the Washingtons with a pre-acceleration notice specifying (1) the default of the security instrument; (2) the action required to cure the default; (3) a day not less than 30 days from the date the notice was given by which default must be cured; and (4) the Washingtons' right to reinstate the loan after acceleration and their right to bring a court action to assert the nonexistence of a default or any other defense of the borrower to the acceleration and sale. (Compl. ¶¶ 90-91, 102-03.) CitiMortgage and Equity contend that CitiMortgage provided the required pre-acceleration notice. (CitiMortgage Mem. 4; Equity Mem. 7.)

---

[5] The plaintiffs contradict their own argument in their Complaint, where they allege that Citifinancial Mortgage Company, Inc. and CitiMortgage are the same entity. (Compl. ¶ 17)

Once again, the Washingtons' claim requires the Court to examine documents outside the Complaint, and therefore survives dismissal at this stage. From the documents produced by the defendants, it appears that CitiMortgage sent notice months before the foreclosure and that the notice met the requirements as set forth in the deed of trust. Assuming the authenticity of the documents, it is likely that this claim will be dismissed on summary judgment. Because this claim requires consideration of documents beyond the Complaint, the Washingtons' claim will survive the motion to dismiss. The Court again cautions the plaintiffs against pursuing unsupported claims.

For these reasons, the Court DENIES Defendants' motions to dismiss the Washingtons' claim for failure to adhere to the terms of the deed of trust. This Count goes forward only on the plaintiffs' claim that the notice of foreclosure does not meet the terms of the deed of trust.

C.    *Count Three*

The Washingtons claim that the foreclosure sale is invalid because the substitute trustee, Equity, failed to comply with the advertising requirements of Va. Code § 55-59.2. (Compl. ¶ 116.) CitiMortgage produced a copy of the advertisement proof of publication at oral argument on the motions. After examining the advertisement and proof of publication, the Washingtons conceded that the advertisement met all the requirements of the law.

Accordingly, the Court GRANTS Defendants' motions to dismiss the Washingtons' claim that the foreclosure sale was not advertised in compliance with the Virginia Code.

D.    *Count Four*

In Count Four of their Complaint, the Washingtons allege that CitiMortgage and Equity committed a breach of contract. This claim is anything but clear. In part of Count Four, the plaintiffs allege that CitiMortgage and Equity breached the contract by committing fraud,

violating Virginia law, and not complying with the express terms of the contract in conducting the foreclosure. This portion of Count Four merely duplicates the claims in other Counts of the complaint, and is therefore dismissed.

The plaintiffs also raise a new argument in Count Four. They contend that the defendants had an implied duty to deal with the plaintiffs fairly and in good faith, and that they violated that implied covenant.

CitiMortgage moves to dismiss this claim on the grounds that Virginia law does not recognize an independent claim for breach of an implied covenant of good faith and fair dealing. (CitiMortgage Mem. 5.) Equity challenges the Washingtons' breach of contract claim on the same grounds, arguing that it owed only those duties set forth in the deed of trust agreement. (Equity Mem. 10.)

Every contract contains an implied covenant of good faith and fair dealing under Virginia law. *See Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28, 33, 466 S.E.2d 382, 385 (1997) (noting that pursuant to the Virginia Code, every contract within the U.C.C. imposes a duty of good faith on its performance); *Mahoney v. NationsBank of Va., N.A.*, 249 Va. 216, 220, 455 S.E.2d 5, 8 (1995) (noting the U.C.C.'s obligation of good faith and fair dealing) (citations omitted); *see also Pa. Life Ins. Co. v. Bumbrey*, 665 F. Supp. 1190, 1195 (E.D. Va. 1997) ("Under Virginia law, every contract contains an implied covenant of good faith and fair dealing in the performance of the agreement" (citations omitted)).

Distinct from the implied covenant of good faith and fair dealing,[6] however, is the exercise of a party's explicit contractual rights: "[I]t is a basic principle of contract law in

---

[6] Several cases question whether Virginia, in fact, recognizes a separate cause of action for breach of implied duties. *See, e.g., Healy v. Chesapeake Appalachia, LLC*, No. 1:10cv00023, 2011 WL 24261, at *14 (W.D. Va. Jan. 5, 2011) ("It does not appear that the Virginia Supreme Court has specifically addressed what, if any, implied duties arise on the part of the parties to a

Virginia . . . that although the duty of good faith does not prevent a party from exercising its explicit contractual *rights*, a party may not exercise contractual *discretion* in bad faith, even when such discretion is vested solely in that party." *Va. Vermiculite Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998) (citations omitted). The Washingtons' breach of contract claim complains of CitiMortgage foreclosing on the deed of trust, which was its right under the terms of the promissory note. "[I]n Virginia, when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip., Inc. v. New Holland N-Am.*, 254 Va. 379, 385, 493 S.E.2d 516, 520 (Va. 1997). An implied covenant of good faith and fair dealing "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that otherwise do not exist." *Id.* (citations omitted); *see also Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 620 (E.D. Va. 2009) (finding no violation of the implied duty of fair dealing because the plaintiff conceded that the defendant could terminate purchase orders "for any reason without penalty upon written notice" and stating that the plaintiff "cannot now attempt to rewrite the purchase orders to amend a term that proves unfavorable to [it]" (citations omitted)); *Clemons v. Home Savers, LLC,* 530 F. Supp. 2d 803, 812 (E.D. Va. 2008), *aff'd*, 273 F. App'x 296 (4th Cir. 2008) (comparing a party

---

written contract under the common law." (citations omitted)); *see also Enomoto v. Space Adventures, Ltd.,* 624 F. Supp. 2d 443, 450 (E.D.Va. 2009) (arguing that *Ward's Equipment* addressed only conduct that the defendant was "explicitly authorized to undertake by the contract"). This query is outside the scope of the present analysis because, as the Western District of Virginia stated in *Healy*, "Whether or not any implied duties arise out of a written contract, Virginia courts have held that a party's breach of an implied duty does not give rise to an independent tort, but gives rise to a cause of action for breach of contract only" *Healy*, 2001 WL 24261, at *14 (citations omitted). In the present case, the Washingtons allege breach of contract based on a violation of the implied covenant of good faith and fair dealing. Thus, the Court need not address whether an independent cause of action exists.

exercising its discretion under the contract in bad faith to using the duty of good faith and fair dealing to modify terms of the contract (internal citations omitted)).

Thus, a party does not breach implied duties when it exercises its rights created under the contract. CitiMortgage had the explicit right to foreclose and sell the Washingtons' home to a third party when the Washingtons failed to make their mortgage payments. The Court, therefore, finds that the Washingtons have not alleged a claim for breach of contract.

In sum, part of Count Four duplicates other counts and the rest of the Count relies on a theory on which the plaintiffs cannot prevail. The Court, therefore, GRANTS the motions to dismiss Count Four.

E.     *Count Five*

The Washingtons allege that CitiMortgage and Equity committed fraud by intentionally and knowingly making false material representations, with the intent to mislead the Washingtons, regarding the promissory note and the deed of trust. The false material misrepresentations that the Washingtons allege are as follows: (1) misrepresenting or failing to disclose material information concerning the current legal status of the promissory note, the current true and lawful owner and holder of the promissory note, and the status, terms, or existence of the original promissory note; (2) misrepresenting or failing to disclose material information concerning the status of the terms of the deed of trust and the required notices to be provided under the deed of trust; (3) deceiving the Washingtons into believing that their loan account would be reinstated and that there would be no foreclosure sale of their residence; (4) representing that they had engaged in honest and fair dealing with the Washingtons; (5) conducting a foreclosure sale of the Washingtons' residence in violation of the deed of trust and the promissory note; (6) submitting documents to the Washingtons regarding the deed of trust

and promissory note with erroneous, fraudulent, misleading, or incorrect information; and (7) conducting a foreclosure sale of the Washingtons' residence in violation of Virginia law. (Compl. ¶ 149(a)-(g).) As can be readily seen, some of the alleged representations are not statements at all, but rather are actions taken by the defendants.

The Washingtons claim that they materially relied on these "misrepresentations" to their detriment. (*Id.* ¶ 150.) As a result of that reliance, the Washingtons suffered damage, particularly the sale of their residence, as well as emotional pain and mental suffering. (*Id.* ¶¶ 152-53.)

Actual fraud in Virginia requires (1) a false representation (2) of a material fact (3) that was made intentionally and knowingly, (4) with the intent to mislead, (5) reasonable reliance by the party misled, and (6) resulting damage to the party mislead. *See Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994) (citations omitted). Constructive fraud requires that the misrepresentation be made innocently or negligently. *Id.* (citations omitted).

CitiMortgage contends that the Washingtons failed to plead fraud with the specificity sufficient to survive a motion to dismiss under Virginia law. (CitiMortgage Mem. 6.) CitiMortgage also argues that the statements allegedly made by Tremble that the foreclosure sale would not proceed were predictions, rather than material facts. (CitiMortgage Reply Mem. 4.) Equity argues that the Washingtons have not established that they reasonably relied on any statements made by Tremble nor have they established that the representations made by Tremble were, in fact, false. (Equity Mem. 11-13.)

Fraud must be pled with specificity, pursuant to Virginia law and Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b); *Ward's Equip.*, 254 Va. at 385, 493 S.E.2d at 520 ("Generalized nonspecific allegations . . . are insufficient to state a valid claim of fraud (citing

*Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 858, 241 S.E.2d 778, 783 (1978).). Count Five is a hodge-podge of allegations, some of which are impermissibly vague, some of which are implausible, some of which are not representations at all, and some of which the plaintiffs could not possibly have relied upon. The Court will address each allegedly fraudulent representation separately.

      a.      Misrepresenting the legal status and holder of the note. The plaintiffs could not have relied upon this statement. The Washingtons do not contend that they were mixed up and sent mortgage payments to the wrong bank or that they have not been credited with whatever mortgage payments they made. When the time for foreclosure arrived, they found out who held the note. This alleged misrepresentation does not amount to fraud.

      b.      Misrepresenting the terms of the deed of trust and the notices of foreclosure. Both the deed of trust and the notices are written documents, and could not have misled the plaintiffs. This claim is not plausible.

      c.      Misleading the plaintiffs into believing that they could bring their account current and that the foreclosure would not occur. The Washingtons have alleged that Tremble, acting on behalf of CitiMortgage and Equity, falsely represented to them that they could bring their account current and that the foreclosure sale would be postponed. Relying on this, they did not take steps to prevent the foreclosure. The Court finds that, in this instance alone, the Washingtons have pled fraud with sufficient specificity to survive a motion to dismiss.

The misrepresentation of a present state of mind can qualify as a material fact. "[T]he promisor's intention—his state of mind—is a matter of fact. When he makes the promise, intending not to perform, his promise is a misrepresentation of *present* fact." *Blair Const., Inc. v. Weatherford*, 253 Va. 343, 348, 485 S.E.2d 137, 140 (1997) (quoting *Colonial Ford Truck Sales,*

*Inc. v. Schneider*, 228 Va. 671, 677, 325 S.E.2d 91, 94 (1985) (internal citations omitted)). Therefore, Tremble's alleged lie—in which he told April Washington that any pending foreclosure sale would be postponed when they obtained the hardship letter—could qualify as a material fact. According to the Complaint, the Washingtons believed, based on the conversations with Tremble, that obtaining the hardship letter would allow them time to reinstate the loan. The Court finds that the Washingtons have sufficiently pled that this alleged lie qualifies as a misrepresentation upon which they reasonably relied.

The parties have not briefed the issue of whether CitiMortgage and Equity are liable for Tremble's alleged misstatements, and the Court does not address that issue.

d.      Misrepresenting that the lenders had engaged in honest and fair dealings. It is implausible that the lenders told the Washingtons that they were engaged in honest and fair dealings. This allegation is also not pled with specificity.

e.      Conducting a foreclosure sale in violation of the note and deed of trust. Conducting a sale is not a representation.

f.      Submitting documents containing incorrect information. The Complaint does not say which documents contain incorrect information, and the plaintiffs have not even implied that any document was erroneous. Fraud must be pled with specificity. This claim fails to do so.

g.      Conducting a foreclosure sale in violation of Virginia law. This is not a representation.

In sum, the only aspect of the fraud claim that survives the motions to dismiss involves the representations by Tremble and the plaintiffs' reliance upon them.

There is a second aspect to the fraud claim that the Court must address—the relief sought. The Washingtons seek to recover attorney's fees for their fraud claim based on the *Bershader*

18

exception to the general prohibition on the recovery of attorney's fees in a breach of contract action. (Pls. Mem. 15-16.) The *Bershader* exception permits a court to award attorney's fees to a prevailing party in a fraud claim. *Prospect Dev. Co. v. Bershader*, 258 Va. 75, 92, 515 S.E.2d 291, 301 (1999) ("We hold that in a fraud suit, a chancellor, in the exercise of his discretion, may award attorney's fees to a defrauded party."). The *Bershader* exception applies in circumstances in which the prevailing party's victory "would have been hollow" absent the recovery of attorney's fees. *Id.*; *see also C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 359 F. Supp. 2d 497, 502-03 (E.D. Va. 2005) (noting that avoiding a "hollow victory" is the purpose of the *Bershader* exception). *Bershader* does not apply "where the relief granted to the prevailing party makes a fee award unnecessary for a fair outcome." *C.F. Trust*, 359 F. Supp. 2d at 502 (citations omitted). Here, if the plaintiffs prevail, they will presumably recover damages or their home. Thus, they would not have a "hollow victory" and therefore cannot recover attorneys' fees.

CitiMortgage also argues that the Complaint fails to state a claim for punitive damages. (CitiMortgage Mem. 9-10.) The Washingtons seek to recover $300,000 in punitive damages. The only claim that the Washingtons have stated to which punitive damages may attach is the fraud claim. Under Virginia law, punitive damages are available for common law fraud claims. *See Adkins v. Crown Auto, Inc.*, 488 F.3d 225, 234 (4th Cir. 2007). To recover punitive damages, the Washingtons must establish the Tremble misled them with actual malice. *See id.* (citing *Jordan v. Sauve*, 219 Va. 448, 451, 247 S.E.2d 739, 741 (1978)).

In summary, Count Five, the fraud claim, survives only with regard to Tremble's alleged statements to the plaintiffs. The plaintiff may recovery punitive damages with respect to this claim, but may not recover attorney's fees. Count Five will be dismissed in part.

*F.     Count Six*

The Washingtons allege that CitiMortgage violated the FDCPA by "committing fraud, being deceitful, engaging in unfair or unconscionable collection actions, making false promises, or making false or misleading representations to the Washingtons in relation to the Key Bank DOT and the Key Bank Note." (Compl. ¶ 164.) CitiMortgage and Equity contend that because the FDCPA governs the collection of debts by third parties, it is inapplicable to CitiMortgage and Equity. (CitiMortgage Mem. 8; Equity Mem. 13-14.) CitiMortgage states that it is a creditor of the Washingtons, not a third-party debt collector. ( CitiMortgage Mem. 8-9.) In their response, the Washingtons argue that CitiMortgage falls within the "false-name exception" by using Equity and BGWW as third-party debt collectors, which brings CitiMortgage within the applicable provisions of the FDCPA. (Pls. Mem. 17.)

Congress enacted the FDCPA to halt abusive, deceptive, and unfair debt collection practices.  15 U.S.C. § 1692 (2009).  The FDCPA regulates many aspects of debt collection, including communication with debt collectors, acquisition of information about consumer location, harassment and misleading representations by debt collectors, and generally unfair practices of debt collectors.  15 U.S.C. § 1692.

The FDCPA "protects consumers from abusive and deceptive practices by *debt collectors*, and protects non-abusive debt collectors from competitive disadvantage." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996) (citing 15 U.S.C. § 1692e) (emphasis added).  These practices include behavior such as "making false threats of arrest and garnishment, impermissibly contacting third parties in regard to debt collection and making false representations about the urgency of payment." *Jones v. Elec. Billing Servs.*, No. 00-CV-287, 2000 WL 33797103, at *2 (E.D. Va. Nov. 7, 2000).

The FDPCA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA applies to debt collectors seeking satisfaction of debts from consumers—the FDCPA does not apply to creditors collecting debts owed directly to the creditor itself. 15 U.S.C. § 1692a(6); *see also Garcia-Contreras v. Brock & Scott, PLLC*, No. 1:09CV761, 2010 WL 4962940, at *1 (M.D.N.C. Nov. 30, 2010) ("'The FDCPA applies only to debt collectors seeking satisfaction of debts from consumers; it does not apply to creditors.'" (quoting *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 500 (7th Cir. 2008) (internal quotation marks omitted))). The statute states that the term debt collector does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person." 15 U.S.C. § 1692(a)(F). In this case, BGWW—not CitiMortgage—would be the primary debt collector.

Thus, in general, a creditor collecting its own debt is not a debt collector within the meaning of the FDCPA. The statute defines a creditor as "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). CitiMortgage, the note holder, is a creditor, not a debt collector, and is not liable under the FDCPA.

The plaintiffs attempt to rely on the "false name exception" to keep CitiMortgage in the case. The false-name exception was designed to combat creditors who attempt to intimidate debtors by creating the false impression that a third party is participating in the debt collection process. *Jones v. Baugher*, 689 F. Supp. 2d 825, 833 (W.D. Va. 2010) (citing *Chiang v. Verizon New Eng., Inc.*, 595 F.3d 26, 38 (1st Cir. 2010). The false name exception applies to "any

21

creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." *Id.* §1692a(6).

In the instant case, there is no allegation that CitiMortgage used any name other than its own. The false name exception does not apply.

Accordingly, the Court finds that in this case CitiMortgage is a creditor, and is exempt from the FDCPA.

In contrast, Equity could be considered a debt collector. Equity was apparently retained to serve as trustee on the deed of trust, and to foreclose on the property. The "actions surrounding [a] foreclosure proceeding [are] attempts to collect that debt. *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006). The problem for the plaintiffs is that they have not alleged anything that Equity has done that violates the Fair Debt Collections Practices Act. The Complaint only refers to Equity as the entity that became the substitute trustee. Since no wrong-doing is alleged as to Equity, it cannot be liable under the FDCPA.

The Court assumes, for purposes of this motion only, that Tremble, an attorney with BGWW, made a false statement to the plaintiffs. Tremble's statement is immaterial to the liability of the parties in this case. A creditor is not liable under a respondeat superior theory for violations of the FDCPA by independent debt collectors hired by the creditor. *See Fouche v. Shapiro & Massey L.L.P.*, 575 F. Supp. 2d 776, 783 (S.D. Miss. 2008); *Andresakis v. Capital One Bank*, No. 09-CV-8411, 2011 WL 1097413, at *3 (S.D.N.Y. Mar. 23, 2011) ("[C]reditors cannot be held responsible for the actions of any other entity merely based on vicarious liability" (citations and internal quotation marks omitted)); *Sprague v. Neil*, Civil No. 1:05-CV-1605, 2007

WL 3085604, at *4 (M.D. Pa. Oct. 19, 2007) ("Federal courts have clearly established that a creditor is not vicariously liable for the actions of its debt collector" (citations omitted)).

CitiMortgage's and Equity's motions to dismiss the Washingtons' FDCPA claim are granted, and Count Six is dismissed.

### G. Damages for Emotional Distress

The Washingtons seek damages for emotional distress in this case. (Pls. Mem. 15.) They may do so only with respect to their fraud claim. The defendants attempt to cast the plaintiffs' claims as an attempt to assert an independent claim for infliction of emotional distress. It is not. Rather, the Washingtons seek such damages as a consequence of the other tortious activity attributed to the defendants. Under Virginia law, such damages are recoverable. The Virginia Supreme Court has stated that "we have approved the recovery of damages for humiliation, embarrassment, and similar harm to feelings, although unaccompanied by actual physical injury, where a cause of action existed independently of such harm." *Sea-Land Serv., Inc. v. O'Neal*, 224 Va. 343, 354, 297 S.E.2d 647 (1982). Since an independent cause of action exists for fraud, the plaintiffs can recover compensatory damages in connection with Count Five, the fraud claim.[7]

---

[7] If, for some reason, the plaintiffs were allowed to pursue their FDCPA claim, they could recover under that claim. *See, e.g., McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1370 (S.D. Fla. 2009); *Sweetland v. Stevens & James, Inc.*, 563 F. Supp. 2d 300, 303-04 (D. Me. 2008); *Chiverton v. Fed. Fin. Group, Inc.*, 399 F. Supp. 2d 96 (D. Conn. 2005); *In Re Hart*, 246 B.R. 709, 732 (Bankr. D. Mass. 2000); *Ortega v. Collectors Training Inst. of Ill., Inc.*, No. 09-21744-Civ, 2011 WL 241948, at *5 (S.D. Fla. Jan. 24, 2011); *Edeh v. Midland Credit Management, Inc.*, No. 09-CV-1706, 2010 WL 3893604 (D. Minn. Sept. 29, 2010). In FDCPA cases, plaintiffs do not need to satisfy the state law requirements to establish intentional infliction or negligent infliction of emotional distress. *See Ortega*, 2011 WL 241948, at *5. This Court has stated: "Finding there to be no statutory language limiting the type of actual damages recoverable, nor persuasive adverse case precedent, while finding compelling supportive precedent, the Court concludes that the [FDCPA] also allows for the recovery of all provable damages, including those of an emotional nature." *Carter v. Countrywide Home Loans, Inc.*, No. 3:07CV651, 2009 WL 1010851, at *4 (E.D. Va. Apr. 14, 2009).

*G. Leave to Amend the Complaint*

To their credit, the Washingtons have filed a detailed complaint setting forth their version of the facts in great detail. Any attempt to amend would be futile, and their request for leave to amend the complaint is denied.

## VI.    Conclusion

For the reasons set forth above, Defendants' motions to dismiss and for judgment on the pleadings are DENIED IN PART and GRANTED IN PART. The following summarizes the Court's rulings:

Count One.    All theories of recovery are dismissed except the issue of whether CitiMortgage is a successor corporation to Citifinancial Mortgage Company, Inc.

Count Two.    The motions to dismiss and for judgment on the pleadings are denied.

Count Three.    Count Three is dismissed in its entirety.

Count Four.    Count Four is dismissed in its entirety.

Count Five.    All theories of recovery are dismissed except whether fraud occurred through Tremble's statements to the plaintiffs, and, if so, whether the CitiMortgage and Equity are liable for Tremble's statements.

Count Six.    Count Six is dismissed in its entirety.

The Court will enter an appropriate order.

_____ /s/
John A. Gibney, Jr.
United States District Judge

Date: <u>May 16, 2011</u>
Richmond, VA